**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DANIEL DIAZ VILLALPANDO, | ) C 13-4028 SC<br>)<br>) ORDER ON MOTIONS TO DISMISS |
| Plaintiff, | ) |
| v. | )<br>) |
| TRANSGUARD INSURANCE COMPANY OF<br>AMERICA, EXEL DIRECT, INC., and<br>DOES 1-100, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## I. **INTRODUCTION**

Now before the Court are Defendants Transguard Insurance
Company of America ("Transguard") and Exel Direct, Inc.'s ("Exel")
(collectively "Defendants") motion to dismiss Plaintiff Daniel Diaz
Villalpando's first amended complaint.  ECF Nos. 14 ("FAC").  The
motions are fully briefed,[1] and the Court finds them appropriate
for decision without oral argument, Civ. L.R. 7-1(b).  As explained

---

[1] ECF Nos. 18 ("Transguard MTD"), 27 ("Opp'n to Transguard"), 28
("Exel MTD"), 31 ("Transguard Reply"), 39 ("Opp'n to Exel"), 45
("Exel Reply").  Plaintiff also moves to file a sur-reply, ECF No.
49, which the Court GRANTS despite Exel's opposition, ECF No. 41.
However, the sur-reply is non-dispositive because, as noted below,
it involves factual disputes not appropriate for resolution on a
motion to dismiss.

below, both motions are DENIED.

**II.   BACKGROUND**

Plaintiff, a Mexican citizen residing in California, was seeking work as a truck driver in September 2008. FAC ¶ 13. On September 8, he met with Jim Dalpino, a representative of Exel. Id. Exel is an Ohio-based delivery service that hires drivers to deliver merchandise, mainly home appliances, to customers who purchase those items from stores that use Exel as a delivery provider. Id. At that meeting, Plaintiff and others who were looking for work as truck drivers talked with Mr. Dalpino for about ten minutes, after which Plaintiff was told that he had a job with Exel but would need to sign certain papers "confirming certain aspects of his work" as an independent contractor. Id.

At the time of the meeting, Plaintiff's English was not fluent, so Mr. Dalpino spoke to him in Spanish and explained that there were four conditions for the job. See id. ¶ 14. Plaintiff would have to (1) "agree to pay for the cost of renting a truck suitable to be used for this delivery service," (2) "pay for a second person to ride with him on deliveries," (3) "pay for liability insurance for the truck, as well as coverage for damage to the truck and any contents," and (4) "pay for insurance on himself and any person assisting him, which Plaintiff believed was workers compensation coverage." Id.

Upon being asked to read and sign certain legal documents, Plaintiff told Mr. Dalpino that he could not read or understand English documents and would need to have them in Spanish. Id. ¶ 16. He was told that no translated documents were available. Id.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Nevertheless, Mr. Dalpino instructed Plaintiff to sign a document

2  called an "Equipment Lease Agreement," FAC Ex. 1, which included an

3  "Exhibit C," a specific document related to Plaintiff's

4  responsibility to obtain insurance.  Mr. Dalpino apparently told

5  Plaintiff to sign and initial a portion of Exhibit C, which he also

6  told Plaintiff would confirm Plaintiff's purchase of worker's

7  compensation insurance.  Id. ¶ 15.  Mr. Dalpino also signed and

8  initialed that part of Exhibit C, which reads as follows: "Workers

9  Compensation Coverage - Workers compensation coverage for the

10  CONTRACTOR and for the CONTRACTOR's W2 Labor."  Id.; Equipment

11  Lease Agreement Ex. C.  Mr. Dalpino also told Plaintiff he needed

12  to backdate the form to September 3, 2008, which Plaintiff did.

13  FAC ¶ 15.  At that point, Plaintiff believed that he was buying

14  workers compensation coverage.  Id.  Mr. Dalpino also instructed

15  Plaintiff to sign an "Independent Truckman's Agreement," which was

16  also backdated.  FAC Ex. 2.[2]  For all documents, Plaintiff relied

17  on Mr. Dalpino's representations and statements as to Exel's

18  employment requirements.  Id. ¶ 16.

19      Exel provided insurance through Transguard, a multi-line

20  insurance agency.  Id. ¶¶ 8-9.  Plaintiff alleges that Mr. Dalpino

21  was acting on behalf of Transguard when he arranged for, sold, and

22  confirmed the issuance of coverage on Transguard's behalf.  Id. ¶

23  9; ECF No. 40 ("Villalpando Decl.") ¶¶ 9-12.  Plaintiff also

24  alleges that Transguard and Exel were related through the National

25  Association of Independent Truckers ("NAIT"), an "affiliation

26  group" formed to market products and services -- in this case,

27

28  [2] Collectively, the Equipment Lease Agreement and Independent
   Truckman's Agreement are the "Agreements."

insurance -- to independent trucking companies.  Id. ¶ 4.
According to Plaintiff, Exel is a NAIT member, and Transguard
provided its insurance coverage to Exel, via its agent, in that
capacity.  See id.

    After Plaintiff joined Exel as an independent contractor, he
was paid per delivery, and the cost of his insurance premiums was
deducted from his paychecks.  Id. ¶ 17.  Transguard allegedly knew
of this arrangement because it had arranged for Exel to negotiate
its employees' insurance coverage.  Id.  Plaintiff adds that
Transguard ratified this conduct by accepting payments for the
insurance Plaintiff purchased through Exel, and also by paying
benefits of such coverage.  Id.  At the time of his meeting with
Mr. Dalpino, however, Plaintiff never obtained any copy of any
evidence of insurance (including a copy of his policy), though
sometime after that meeting, Plaintiff did receive a one-page
document entitled "Evidence of Insurance."  Id. ¶ 18 & Ex. 3.
Throughout this time, based on Mr. Dalpino's statements and
representations, Plaintiff believed he had purchased the requisite
workers compensation insurance that Exel required.  Id.

    On October 17, 2010, while making a delivery for Exel,
Plaintiff was badly injured when a refrigerator fell on top of him.
Id. ¶ 20.  He was knocked unconscious and airlifted to a hospital.
Id.  He suffered, among other things, "a concussion,
sprains/strains of the arms, shoulders, neck and thoracic spine,
including a cervical and lumbar radiculopathy, thus necessitating
surgeries."  Id.  He spent several months undergoing rehabilitation
and may require future surgeries.  Id.  While he recovered, Exel
contacted Transguard to make a claim for him.  Id. ¶ 22.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Transguard paid some of Plaintiff's bills, and also provided payments of $500 per week for 104 weeks, through October 2012.  Id. However, after Plaintiff's doctors told him that he would not be able to return to work at Exel, Plaintiff contacted Transguard to ask for continuing disability benefits.  Id.  Transguard refused. Id.  Transguard's representative told Plaintiff that in order to obtain continuing disability benefits, his policy required that he apply for Social Security benefits.  Id.

Plaintiff was unaware of such a requirement and, in fact, had never been given a copy of his insurance policy until he asked for one after Transguard's refusal.  Id.  He has since discovered that Defendants contend that he did not purchase workers compensation insurance, but rather a different type of insurance that Plaintiff did not understand, the provisions of which Defendants concealed from him.  Id. ¶ 25.  Until that point Plaintiff believed he had purchased workers compensation insurance that would cover his total disability and medical expenses, an expectation he contends is verified by his weekly payments and the payments of his medical bills, which Plaintiff contends resulted in Transguard's ratification of Mr. Dalpino's and Exel's conduct for Transguard's benefit.  Id.

In accordance with Transguard's representative's instructions, Plaintiff requested Social Security benefits -- which at that point he had thought were only for retirement, not pre-retirement disability.  Id. ¶¶ 24-25.  However, as a non-citizen, Plaintiff was not eligible for Social Security benefits because he did not have enough "credits."[3]  Id. ¶ 26.  Such credits are accumulated by

---

[3] Plaintiff states that his notification of ineligibility arrived

5

**United States District Court**
For the Northern District of California

1   working in certain jobs for certain periods of time, and Plaintiff
2   contends that for Social Security eligibility, he would have needed
3   to work for ten years (forty work quarters) in eligible jobs.   Id.
4   ¶ 28.

5       After Plaintiff received that notice of ineligibility,
6   Transguard informed Plaintiff via an email dated October 15, 2012,
7   that Plaintiff's claim would be denied "not because he was totally
8   disabled from working but because he was not 'approved for Social
9   Security Disability . . . [and he did] not qualify for disability
10  benefits because [he had] not worked long enough under Social
11  Security.'"   Id. ¶ 27 (alterations in the original).   Plaintiff
12  contends that Defendants had always known that he could not qualify
13  for the insurance they sold him.   Id. ¶ 28.   He alleges that they
14  hid this fact from him, telling him instead that he was purchasing
15  workers compensation insurance that would apply if he was injured
16  while working for Exel.   Id. ¶¶ 28-30.   In accordance with
17  Plaintiff's beliefs and expectations about his insurance, he paid
18  premiums for 202 weeks.   Id. ¶ 29.

19      Based on these facts, Plaintiff alleges that Transguard's
20  insurance benefit denial was improper because it renders his
21  insurance coverage "illusory," since Plaintiff could never be
22  covered under the plan given his lack of U.S. citizenship and
23  Social Security credits.   Id. ¶ 30.   He also maintains that
24  Defendants' position is an act of material non-disclosure under
25  California insurance law, since they never told him that he would
26  not be eligible for coverage under the plan he paid for.   Id. ¶ 31.

27

28  by letters dated September 12, 2002, but the Court assumes that
    this was a typo, given the narrative.

**United States District Court**
For the Northern District of California

1   Plaintiff contends that Defendants' coverage position is also a

2   prohibited type of post-claims underwriting, since Transguard

3   determined after Plaintiff submitted a claim that he was never

4   eligible for benefits and was never insured for workers

5   compensation -- as opposed to a denial of coverage based on

6   Plaintiff's not being disabled.  See id. ¶ 32.

7        The gist of Plaintiff's complaint is that Defendants

8   collaborated to sell insurance policies to people like Plaintiff

9   who could not understand English when entering the insurance

10  contracts, but were nevertheless tricked into entering them as a

11  condition of their employment.[4]  Id. ¶ 33.  Based on these facts,

12  Plaintiff asserts against Transguard causes of action for (1)

13  breach of insurance contract; (2) declaratory relief, seeking a

14  declaration that Plaintiff is disabled and entitled to benefits

15  wrongfully withheld; and (3) breach of the implied covenant of good

16  faith and fair dealing.  Plaintiff asserts against both Transguard

17  and Exel causes of action for (4) intentional misrepresentation and

18  concealment, and (5) negligent misrepresentation.  Defendants each

19  move to dismiss.

20

21  **III.  LEGAL STANDARD**

22       A motion to dismiss under Federal Rule of Civil Procedure

23  12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

24  Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

25  on the lack of a cognizable legal theory or the absence of

26  sufficient facts alleged under a cognizable legal theory."

27  _____

28  [4] Indeed, Plaintiff contends that a vast majority of his delivery
    department colleagues were not U.S. citizens.  FAC ¶ 32.

7

**United States District Court**
For the Northern District of California

1    <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

2    1988).  "When there are well-pleaded factual allegations, a court

3    should assume their veracity and then determine whether they

4    plausibly give rise to an entitlement to relief."  <u>Ashcroft v.</u>

5    <u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

6    must accept as true all of the allegations contained in a complaint

7    is inapplicable to legal conclusions.  Threadbare recitals of the

8    elements of a cause of action, supported by mere conclusory

9    statements, do not suffice."  <u>Id.</u> (citing <u>Bell Atl. Corp. v.</u>

10   <u>Twombly</u>, 550 U.S. 544, 555 (2007)).

11       Claims sounding in fraud are subject to the heightened

12   pleading requirements of Federal Rule of Civil Procedure 9(b),

13   which requires that a plaintiff alleging fraud "must state with

14   particularity the circumstances constituting fraud."  <u>See</u> <u>Kearns v.</u>

15   <u>Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy

16   Rule 9(b), a pleading must identify the who, what, when, where, and

17   how of the misconduct charged, as well as what is false or

18   misleading about [the purportedly fraudulent] statement, and why it

19   is false."  <u>United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,</u>

20   <u>Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and

21   citations omitted).

22

23   **IV.**   **<u>DISCUSSION</u>**

24        **A.**   **<u>Transguard's Motion</u>**

25             **i.**     **<u>Breach of Contract & Declaratory Relief</u>**

26        Transguard moves to dismiss Plaintiff's breach of contract and

27   declaratory relief claims, arguing that: (1) Plaintiff does not

28   identify any policy benefits to which he was entitled but that

**United States District Court**
For the Northern District of California

1  Transguard refused to pay, (2) Plaintiff admits that Transguard

2  paid the policy's temporary total disability benefits, and (3) the

3  policy's provision relating to continuous total disability benefits

4  is valid and enforceable.  Transguard MTD at 10-11.

5      Transguard notes that Plaintiff's "Evidence of Insurance" form

6  clearly states that none of Plaintiff's coverage is workers'

7  compensation coverage, rendering continuing disability benefits

8  unavailable to Plaintiff because he did not qualify for his own

9  plan's coverage.  See id.  Transguard's point here is that because

10 Plaintiff clearly does not satisfy the policy's coverage

11 requirements for continuing disability benefits, and Transguard

12 paid the benefits that were required of it, there is no breach.

13 Id.  Further, Transguard contends that Plaintiff has pleaded

14 nothing that would create a plausible agency relationship between

15 it and Exel -- e.g., that Mr. Dalpino was an agent for Transguard,

16 or that Exel is a member of a trucking-industry affiliation group

17 that offers its members insurance -- so any understanding Plaintiff

18 had that he was purchasing workers' compensation insurance cannot

19 be imputed to Transguard.  Id. at 10-11.

20     On this latter point, Transguard cites Plaintiff's pleadings

21 that Plaintiff's independent contractor arrangement was only with

22 Exel, Mr. Dalpino signed documents only on Exel's behalf, and also

23 to a state court action Plaintiff filed against Exel indicating

24 that Exel was just one of Transguard's customers, not, for example,

25 its agent.  Id. at 11 (citing ECF No. 11-1 ("Transguard RJN") Ex. 1

26 ("State Compl.").[5]  The Court finds that these are all factual

27

28 [5] The Court takes notice of Transguard's RJN under Federal Rule of
   Evidence 201, to the extent that the documents include public state
   court filings.  The Court does not take notice of the truth of any

9

disputes not subject to determination on a Rule 12(b)(6) motion, since Plaintiff's pleadings, taken as true, are plausible and detailed enough to meet the requirements of Rules 8 and 9.  To the extent that Transguard's motion depends on these arguments, it is DENIED.

Plaintiff contends that Transguard's legal arguments are misleading.  He states that the Court should focus on the fact that Transguard denied Plaintiff's total disability benefits claim not on the basis of whether Plaintiff was disabled, but only because Plaintiff had not acquired enough credits to qualify for Social Security -- a condition Transguard allegedly knew that Plaintiff could not satisfy.  See Opp'n at 6.  This, according to Plaintiff, renders Transguard's coverage illusory and constitutes post-claim underwriting, so the Court should impose a coverage obligation on Transguard.  Id.

Plaintiff first seeks to distinguish two of Transguard's cases: Miller v. Monumental Life Insurance Co., 502 F.3d 1245 (10th Cir. 2007) and Harvell v. Chater, 87 F.3d 371 (9th Cir. 1996). Transguard cited Miller in support of its statement that "many courts have found provisions [requiring Social Security disability qualification] such as that in Transguard's policy enforceable." Mot. at 12 (citing Miller, 502 F.3d at 1251).  Transguard oversimplifies Miller.  That case was a summary judgment decision in which a plaintiff had been awarded Social Security disability benefits but denied coverage under a plan that used Social Security benefits determinations as conditions precedent for continuous total disability coverage.  See Miller, 502 F.3d at 1254-55.  It

fact alleged in the State Complaint.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  was not a general approval of such clauses, or a case analyzing

2  allegations at the motion to dismiss stage.  However, the Court

3  does not find <u>Miller</u> relevant to Plaintiff's argument either.

4  Again, it was a case about whether a Social Security Administration

5  ("SSA") decision satisfied a clause similar to the one challenged

6  here -- it had nothing to do with whether inclusion of the clause

7  was unlawful in some way.  The same applies to <u>Harvell</u>, in which

8  the Ninth Circuit reviewed a grant of summary judgment that was

9  based on the district court's rejection of the plaintiff-

10 appellant's constitutional challenge to an SSA denial of disability

11 insurance benefits.

12      The parties' present dispute, given Plaintiff's arguments,

13 turns on whether Transguard's inclusion of the Social Security

14 requirement in the policy, knowing Plaintiff would be ineligible,

15 renders the policy unlawful in some way.  Plaintiff's argument,

16 unlike those in <u>Miller</u> or <u>Harvell</u>, is that the requirement's

17 inclusion in Plaintiff's policy was a calculated choice: people

18 like Plaintiff are unlikely to qualify for Social Security

19 disability benefits, given the credit requirement, so insurance

20 companies like Transguard have virtually no obligations for

21 continuous disability coverage, and they shoulder no virtually

22 risk.  <u>See</u> Opp'n at 7-12.[6]

23            **a.   "Illusory" Agreements**

24      In California, insurance policies may not provide illusory

25 coverage.  <u>See</u> <u>Md. Casualty Co. v. Reeder</u>, 221 Cal. App. 3d 961,

26 

27 [6] Plaintiff also asks the Court to find the policy in question
   ambiguous or inconspicuous.  The Court declines to do so on a
28 motion to dismiss, especially when the policy itself is not in
   evidence.  These issues can be resolved at a later date.

1   977 (Cal. Ct. App. 1990).  An illusory promise is a promise under

2   which the promisor assumes no obligation, as when the promise is

3   conditioned on something a promisor knows will not occur or is

4   wholly under the promisor's control.  See Asmus v. Pac. Bell, 23

5   Cal. 4th 1, 15-16 (Cal. 2000).

6       Plaintiff argues that Transguard's policy was illusory

7   because, while Plaintiff paid premiums for more than 200 weeks,

8   Transguard had no obligation to pay total disability benefits

9   because Transguard knew that Plaintiff could not have been eligible

10  for Social Security prerequisite.  See Opp'n at 8.  Therefore

11  Plaintiff concludes that Transguard's coverage was illusory.  Id.

12      Transguard disagrees.  It argues that it had no knowledge of

13  Plaintiff's Social Security situation; that neither it or its

14  agents had any duty to determine whether Plaintiff's policy was

15  adequate to meet Exel's requirements (and that it cannot be liable

16  for its agents' negligence in failing to recommend adequate

17  coverage); and that, in any event, Plaintiff obtained the benefits

18  to which he was entitled, in the form of temporary disability

19  benefits and medical benefits.  See Transguard Reply at 4-6.

20      The Court does not find the disputed terms illusory on their

21  face: they are conditional, so whether Transguard had an obligation

22  depends on whether it knew Plaintiff would not be eligible for

23  Social Security benefits or whether it controlled that eligibility.

24  See Asmus, 20 Cal. 4th at 15-16.  Since the latter clearly does not

25  apply -- SSA makes those determinations -- Transguard would need to

26  have known of Plaintiff's Social Security ineligibility at the time

27  it made the contract with Plaintiff.  See FAC ¶ 30.

28      Plaintiff has alleged that Mr. Dalpino was acting as an agent

United States District Court
For the Northern District of California

for Transguard, and that through this mutually beneficial relationship, Transguard knew about Plaintiff's ineligibility for Social Security benefits.  See id. ¶¶ 7, 9, 12, 30.  Transguard contends that it is not liable for its agents' negligence in failing to recommend adequate or proper insurance coverage, Reply at 5 (citing Shultz Steel Co. v. Hartford Ac. & Indemnity Co., 187 Cal. App. 3d 513, 518-19 (Cal. Ct. App. 1984), and they are not wrong about that, but Plaintiff has alleged intentional torts, not negligence, on Mr. Dalpino's part.

Further, Transguard's citation to Fagundes v. American International Adjustment Co., 2 Cal. App. 4th 1310 (Cal. Ct. App. 1990), is inapposite.  The plaintiff in Fagundes, who had been in a car accident, argued that his insurance policy's coverage was illusory because both he and the other driver had $15,000 Uninsured/Under-Insured Motorist ("UM/UIM") benefits plans.  Id. at 1313-14.  This meant that after all parties' claims were processed, the plaintiff obtained no sum whatsoever.  Id. at 1314.  The court held that this was not an illusory contract: the plaintiff chose the lowest coverage amount and the insurance company paid it -- the fact that plaintiff had apparently chosen a sub-optimal plan did not render the plan's coverage illusory.  Unlike the plan in Fagundes, Plaintiff has alleged that Transguard knew it would not have to pay benefits under part of the plan.

Plaintiff's pleadings suggest that Transguard knew that it would not have to pay Plaintiff's total disability benefits, which at this stage indicates that Plaintiff has adequately pled that the insurance agreement is illusory.  Further, this is plausible in the context of Plaintiff's allegations: if Transguard had a working

13

1  relationship with Exel of the type Plaintiff alleges, and

2  Transguard knew about Exel's contractors' general ineligibility for

3  Social Security benefits, it could accept Exel contractors' premium

4  payments but be fairly secure in the knowledge that it would not

5  incur any obligation to pay certain benefits.  Transguard's motion

6  to dismiss fails on this point.

7                   **b.  <u>Post-Claim Underwriting</u>**

8      Plaintiff also argues that Transguard has unlawfully engaged

9  in prohibited "postclaims underwriting."  Under California

10  Insurance Code section 10384, postclaims underwriting of health and

11  disability policies is defined as "the rescinding, canceling, or

12  limiting of a policy or certificate due to the insurer's failure to

13  complete medical underwriting and resolve all reasonable questions

14  arising from written information submitted on or with an

15  application before issuing the policy or certificate."  Plaintiff

16  contends that Transguard's refusal to provide benefits based on

17  Plaintiff's ineligibility for Social Security amounts to a

18  postclaim determination that Plaintiff was neither eligible for

19  benefits nor insured for workers' compensation or any disability

20  coverage.  FAC ¶¶ 31-32.  Plaintiff also alleges that Transguard

21  made this coverage decision despite knowing that he and many other

22  Exel employees would be ineligible for coverage due to the Social

23  Security clause in their contracts.  <u>Id.</u>

24      Transguard argues that it did not rescind, cancel, or limit

25  its policy due to a failure to resolve reasonable questions arising

26  from Plaintiff's written information.  Reply at 6.  It maintains

27  that it merely complied with the terms of the agreement, which

28  requires as a condition precedent Plaintiff's proof of a Social

**United States District Court**
For the Northern District of California

1  Security Disability Award.  <u>Id.</u>  Transguard also contends that

2  Plaintiff's authority, <u>Hailey v. California Physicians' Service</u>,

3  158 Cal. App. 4th 452, 465-66 (Cal. Ct. App. 2007), is inapposite

4  because it concerned the California Health and Safety Code's

5  provision on postclaims underwriting, not the California Insurance

6  Code's.

7       The Court is not convinced.  Plaintiff has alleged that

8  Transguard and Exel were both on notice that many of Exel's insured

9  employees, who were instructed to purchase Transguard's insurance,

10  would be ineligible for benefits under the plans because they were

11  also ineligible for Social Security.  Taking Plaintiff's

12  allegations as true, Transguard's rescinding, canceling, or

13  limiting its policy without having resolved the reasonable question

14  of whether its insureds could ever obtain benefits amounts to

15  postclaims underwriting.  Regarding <u>Hailey</u>, the Court does not see

16  much appreciable difference between that case's reasoning on

17  postclaims underwriting or the California Health and Safety Code's

18  definition of the term.[7]  The policy <u>Hailey</u> discusses regarding the

19  prohibition on postclaims underwriting is consonant with

20  Plaintiff's claims here: the point of prohibiting such practices is

21  to prevent insureds from having to pay premiums and operate under

22  the assumption that they are insured, only to learn after

23  submitting a claim that they are not, in fact, insured.  158 Cal.

24  App. 4th at 465.  Taking Plaintiff's allegations as true,

25  _____

26  [7] Specifically, the Health and Safety Code reads: "For purposes of
   this section, 'postclaims underwriting' means the rescinding,

27  canceling, or limiting of a plan contract due to the plan's failure
   to complete medical underwriting and resolve all reasonable

28  questions arising from written information submitted on or with an
   application before issuing the plan contract."

Transguard knew or should have known at the time Plaintiff obtained his policy that, due to Plaintiff's circumstances and Transguard's relationship with Exel, it was likely that Plaintiff would not in fact be insured.

Plaintiff has sufficiently alleged, for the purposes of surviving a Rule 12(b)(6) motion, that Transguard's actions are impermissible under the California Insurance Code's provisions on postclaims underwriting.

ii.     **Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff contends that Transguard's conduct constitutes a breach of the implied covenant of good faith and fair dealing.  In the insurance context, the implied covenant requires the insurer to refrain from injuring its insured's right to receive the benefits of the insurance agreement.  Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (Cal. 1979).  An insurer tortiously breaches the implied covenant when it engages in unreasonable conduct in connection with an insured's claim, placing its own interests above those of its insureds.  Century Sur. Co. v. Polisso, 139 Cal. App. 4th 922, 949 (Cal. Ct. App 2006) (citing Egan, 24 Cal. 3d at 818).  A claim under the implied covenant requires that (1) benefits under the policy have been withheld, and (2) the reason for withholding benefits was unreasonable or without proper cause.  Id. (citing Neal v. Farmers Ins. Exch., 21 Cal. 3d 910, 920 (Cal. 1978)).  The issue of reasonableness is normally a question of fact.  Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co., 90 Cal. App. 4th 335, 347 (Cal. Ct. App. 2001).

According to Plaintiff, Transguard's failures to investigate

1  Plaintiff's entitlement to benefits and to give Plaintiff's
2  interests equal consideration to its own constitute breaches of
3  good faith and fair dealing.  FAC ¶¶ 47-48.  Plaintiff also cites
4  its arguments that the policy's coverage is illusory to contend
5  Transguard acted in bad faith.  See Opp'n at 12-13.  Transguard
6  argues that it is Plaintiff's fault that he did not buy workers'
7  compensation coverage, that any misrepresentation or coercion was
8  due to Exel's behavior, and that Transguard had no duty to
9  investigate Plaintiff's ability to obtain the benefits he sought.
10  Transguard Reply at 7.

11      The Court finds that Plaintiff has pled a claim for breach of
12  the implied covenant.  According to Plaintiff's complaint,
13  Transguard's agent with Exel sold Plaintiff the insurance, and
14  Transguard knew of Plaintiff's probable inability to obtain
15  coverage under the plan it sold.  Under these circumstances,
16  Plaintiff has adequately alleged that Transguard deprived Plaintiff
17  of his benefits without proper cause, and that Transguard put its
18  own interests in obtaining premiums above Plaintiff's interest in
19  obtaining coverage or understanding the limitations of his plan.

20          **iii.**          <u>**Fraud and Negligent Misrepresentation**</u>

21      Plaintiff alleges that both Defendants' conduct and
22  Transguard's denial of total disability benefits constitutes
23  intentional misrepresentation and concealment, as well as negligent
24  misrepresentation.  The elements of an intentional fraud claim are:
25  "(1) a representation of material fact by defendant, (2) with
26  knowledge, actual or virtual, of the true facts, (3) to a party
27  actually or permissively ignorant of the truth, (4) with the
28  intention, actual or virtual, that the other party act upon it, and

**United States District Court**
For the Northern District of California

(5) the other party was induced to act." <u>Cedars Sinai Med. Ctr. v.</u> <u>Mid-W. Nat. Life Ins. Co.</u>, 118 F. Supp. 2d 1002, 1012 (C.D. Cal. 2000) (citing <u>San Diego Mun. Credit Union v. Smith</u>, 176 Cal. App. 3d 919, 923 (Cal. Ct. App. 1986)).  The elements of a negligent misrepresentation cause of action differ only with respect to the requisite state of mind.  <u>Id.</u>; <u>JMP Sec. LLP v. Altair</u> <u>Nanotechnologies Inc.</u>, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012).

Plaintiff contends that Transguard (partly through its agent Mr. Dalpino) and Exel arranged to sell insurance to unsophisticated persons like himself, knowing that Plaintiff and others would pay premiums on insurance plans that Defendants were aware would not pay certain benefits.  <u>See</u> FAC ¶¶ 14, 28-29, 33-34, 53.  This, according to Plaintiff, constitutes promissory fraud.  In any event, Plaintiff claims, Transguard and Exel's representations to him about his insurance policy were made without reasonable inquiry or belief in their truth, misleading him into paying for insurance despite being ineligible for benefits.  Transguard argues that it is implausible for Mr. Dalpino to have been its agent, and for Transguard to have known that Plaintiff would not qualify for continuous total disability benefits.  Transguard Reply at 7.  The Court disagrees.  At this point, Plaintiff's pleadings are sufficiently detailed and plausible to survive a Rule 12(b)(6) motion.

**B.   Exel's Motion**

Both the Equipment Lease Agreement and the Independent Truckman's Agreement contain arbitration provisions, which are identical.  The relevant parts of the arbitration provision read:

**United States District Court**
For the Northern District of California

> Except as set forth below, CONTRACTOR agrees to submit to final and binding arbitration any and all claims and causes of action which CONTRACTOR may have against the COMPANY . . . .   Similarly, COMPANY and its subsidiaries agree to submit to final and binding arbitration any and all claims and causes of action which they may have against CONTRACTOR . . . .   This arbitration provision includes all tort claims and all claims based on an alleged violation of statute or public policy. , .   The legal basis for this arbitration provision is the state laws governing arbitration in the state in which CONTRACTOR performs services under this Agreement . . . It is agreed that no class action or consolidated class actions will be available under the arbitration procedure.   NOTE: This arbitration provision constitutes a waiver of CONTRACTOR'S right to a jury trial.

Equipment Lease Agreement ¶ 17; Independent Truckman's Agreement ¶ 16.

Exel contends that all of Plaintiff's tort claims against it are subject to mandatory arbitration, regardless of Plaintiff's contention that he could not read the operative contracts.  See Exel MTD at 4-5.  Exel therefore asks the Court to dismiss Plaintiff's claims, id. at 6 (citing cases supporting a district court's ability to dismiss a case when all of the relevant claims are arbitrable), or to stay the case and compel arbitration.

Plaintiff argues, among other things, that he did not knowingly and voluntarily agree to submit to arbitration and to relinquish his right to a jury trial, because he could not understand or read English at the time he signed the Agreements.

In response, Exel begins with a threshold factual argument that Plaintiff understood written and spoken English when he was recruited by Exel.  See Reply at 2-3; ECF Nos. 46 ("Dalpino Decl.") & 47 ("Gutierrez Decl.").  This factual dispute is inappropriate for resolution at this time, and the Court declines to address it. The only factual contentions properly before the Court are those in

**United States District Court**
For the Northern District of California

the FAC, and the Court must take them as true at this time.[8]

Since the crux of this dispute is not the invalidity of the contract as a whole, but rather the arbitration provision itself, the Court must decide whether the arbitration provision is invalid and unenforceable under section 2 of the FAA.  Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th Cir. 2006) (en banc). While agreements to arbitrate are valid, irrevocable, and enforceable as a matter of federal law, state law nonetheless governs issues concerning the validity, revocability, and enforceability of contracts generally.  Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987).  As such, generally applicable contract defenses may be asserted to invalidate arbitration agreements without contravening the FAA.  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).  Plaintiffs need not specifically challenge arbitration clauses in their complaints. See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 998 (9th Cir. 2010).  Rather, "as long as the plaintiff's challenge to the validity of an arbitration clause is a distinct question from the validity of the contract as a whole, the question of arbitrability is for the court to decide."  Id.

    **i.**    **Exemption**

As a threshold matter, Plaintiff contends that the FAA exempts him from its arbitration requirements, because the FAA specifically exempts from its coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in

---

[8] Plaintiff moved for leave to file a sur-reply, ECF No. 49, which the Court GRANTS.  However, Plaintiff's brief only concerns factual issues surrounding his ability to speak English at the time he entered the Agreements.  The Court therefore declines to address the issues Plaintiff raises at this time.

foreign or interstate commerce."  9 U.S.C. § 1; <u>see also</u> <u>Circuit</u>
<u>City Stores, Inc. v. Adams</u>, 532 U.S. 105 (2001) (transportation
workers engaged in interstate commerce are exempt from the FAA).
In support of his argument that he is a transportation worker,
Plaintiff cites <u>Veliz v. Cintas Corp.</u>, No. C 03-1180 SBA, 2004 WL
2452851, at *5 (N.D. Cal. Apr. 5, 2004), in which the court applied
an eight-factor test to determine whether the plaintiff counted as
a "transportation worker" subject to FAA exemption.  The Court
finds that case, as well as <u>Circuit City</u>, inapposite.  The FAA
provision in question concerns employment contracts, and Plaintiff
has pled that he is an independent contractor.  <u>See</u> 9 U.S.C. § 1
(referencing "contracts of employment").  According to the Ninth
Circuit, the issue of whether a party is an independent contractor
is a "highly factual" question.  <u>Harden v. Roadway Package Sys.,</u>
<u>Inc.</u>, 249 F.3d 1137, 1141 (9th Cir. 2001).

Based on Plaintiff's allegations, the Court cannot find at
this point that he is exempt from the FAA.  The Ninth Circuit has
indicated that the distinction between independent contractors and
employees is both highly factual and material for further analysis
of FAA exemption, <u>see</u> <u>Harden</u>, 249 F.3d at 1141, so the Court cannot
assume at this point (as Plaintiff appears to have done, given his
lack of briefing on the matter) that independent contractors and
employees alike are potentially exempt from the FAA.  <u>See</u> Opp'n at
7-9.  Further, the Agreements indicate that the relationship
between Plaintiff and Exel is "not an employer-employee
relationship."  <u>See</u> Independent Truckman's Agreement ¶ 9.

Under these circumstances, and considering that the § 1
exclusion is to be both interpreted narrowly, <u>Circuit City</u>, 532

**United States District Court**
For the Northern District of California

1   U.S. at 106, and understood to favor arbitration, <u>Volt Info Scis.,</u>

2   <u>Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.</u>, 489 U.S. 468,

3   476 (1989), the Court declines to find at this time that Plaintiff

4   is exempt from the FAA.  Since the Court finds that the FAA governs

5   this dispute, Plaintiff's allegation that Exel's motion should be

6   denied because it does not cite California arbitration law is

7   inapposite.

8        **ii.    Capacity and Unconscionability**

9        Plaintiff also argues he lacked capacity to agree to the

10  arbitration clause in the Agreements.  Opp'n to Exel at 6-7.

11  However, it is not clear from Plaintiff's brief or declarations

12  whether he contends that he specifically lacked capacity to enter

13  the arbitration clause, as opposed to the Agreements as a whole.

14  <u>See</u> <u>id.</u>

15       The rule in California is that "when a person with the

16  capacity of reading and understanding an instrument signs it, he

17  is, in the absence of fraud and imposition, bound by its contents .

18  . . . ."  <u>AGI West Linn of Appian Grp. Investors DE LLC v. Eves</u>, 217

19  Cal. App. 4th 156, 162 n.6 (Cal. Ct. App. 2013).  Even if a

20  plaintiff is illiterate, however, he still has the responsibility

21  to have a contract read to him if he does not understand it.  <u>See</u>

22  <u>Hutchins v. TNT/Reddaway Truck Line, Inc.</u>, 939 F. Supp. 721, 724

23  (N.D. Cal. 1996).  Based on Plaintiff's irregular allegations as to

24  exactly how much of the Agreements he understood, the Court is not

25  persuaded that Plaintiff lacked capacity to enter just one

26  particular clause of the Agreements.  The question of whether

27  Plaintiff had capacity goes to the formation of the entire contact,

28  which would be an issue for the arbitrator, as opposed to the

United States District Court
For the Northern District of California

1   question of the arbitration clause, which is for the Court.  Bridge

2   Fund, 622 F.3d at 998.  The Court rejects Plaintiff's capacity

3   argument, finding Plaintiff's contentions on this issue more suited

4   for an unconscionability argument.

5       "To defeat an arbitration clause, the litigant must show both

6   procedural and substantive unconscionability, although 'the more

7   substantively oppressive the contract term, the less evidence of

8   procedural unconscionability is required to come to the conclusion

9   that the term is unenforceable, and vice versa.'"  Bridge Fund, 622

10  F.3d at 1004 (quoting Armendariz v. Found. Health Psychcare Servs.,

11  Inc., 24 Cal. 4th 83, 114 (Cal. 2000)).

12      "Procedural unconscionability involves oppression or surprise

13  due to unequal bargaining power, while substantive

14  unconscionability focuses on overly harsh or one-sided results."

15  Id. (internal quotations and citations omitted).  Under California

16  law, contracts of adhesion, "or at least terms over which a party

17  of lesser bargaining power had no opportunity to negotiate," are

18  treated as procedurally unconscionable "to at least some degree."

19  Id.

20      First, as to procedural unconscionability, Plaintiff alleges

21  that his English was poor at the time he signed the Agreements, and

22  that at least as to some of the Agreements' terms, Mr. Dalpino

23  either affirmatively misled him or omitted material facts about the

24  Agreements.  Since the Agreements are also form contracts drafted

25  by an entity with far more bargaining power than Plaintiff, the

26  Court finds that Plaintiff has established procedural

27  unconscionability.  See Armendariz, 24 Cal. 4th at 114 (employment

28  contract that was "imposed on employees as a condition of

United States District Court
For the Northern District of California

1  employment" with "no opportunity to negotiate" was adhesive).

2  Since the procedural unconscionability here seems high, the Court

3  also finds that Plaintiff need only make a minimal showing of the

4  arbitration clause's substantive unconscionability to render it

5  unenforceable.  Bridge Fund, 622 F.3d at 1004.

6      Second, Plaintiff argues that the arbitration clause is

7  substantively unconscionable because Exel's conduct regarding the

8  arbitration clause is highly oppressive, and the clause did not

9  fall within his reasonable expectations (given Mr. Dalpino's

10 misrepresentations and Plaintiff's own lack of understanding

11 surrounding the Agreements).  Exel contends that because the

12 arbitration clause is bilateral -- both parties are equally subject

13 to it -- and also conspicuous and easily understandable, it cannot

14 be substantively unconscionable.  See Exel Reply at 9-10.

15     The Court finds that the arbitration clause has the requisite

16 "modicum of bilaterality" here.  Armendariz, 24 Cal. 4th at 117.

17 The clause requires both party to submit all employment-related

18 claims to arbitration, and it does not limit either side's relief

19 or otherwise suggest that Plaintiff is more disadvantaged than Exel

20 here.[9]  See id.  However, Plaintiff argues that the arbitration

21 clause is contrary to his reasonable expectations as the weaker or

22 "adhering" party.  Opp'n to Exel at 12-13 (citing Bruni v. Didion,

23 _____

24 [9] The class action prohibition would appear to violate California
   law, per Ninth Circuit precedent, but it is not currently at issue

25 in this case, so the Court does not examine it at this time.  See
   Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 986-87

26 (9th Cir. 2007).  Further, the clause's language about Plaintiff
   waiving his right to a jury trial could indicate that the provision
   is not fully bilateral, though the fact that both parties commit to

27 arbitration (thereby waiving Exel's jury trial right), and the
   Court's interpretation of the clause in favor of arbitration,

28 suggest that the waiver provision does not weigh heavily for or
   against unconscionability.

**United States District Court**
For the Northern District of California

1  160 Cal. App. 4th 1272, 1290-91 (Cal. Ct. App. 2008); <u>Lima v.</u>

2  <u>Gateway, Inc.</u>, 886 F. Supp. 2d 1170, 1183 (C.D. Cal. 2012) (citing

3  <u>Bruni</u>)).   The California Supreme Court noted the relevance of

4  "reasonable expectations" in substantive unconscionability cases as

5  follows:

6        Generally speaking, there are two judicially imposed
         limitations on the enforcement of adhesion contracts or
7        provisions thereof.  The first is that such a contract
         or provision which does not fall within the reasonable
8        expectations of the weaker or "adhering" party will not
         be enforced against him.  The second -- a principle of
9        equity applicable to all contracts generally -- is that
         a contract or provision, even if consistent with the
10       reasonable expectations of the parties, will be denied
         enforcement if, considered in its context, it is unduly
11       oppressive or "unconscionable."

12 <u>Graham v. Scissor-Tail, Inc.</u>, 623 P.2d 165 (Cal. 1981) (in bank).

13 Later cases have referred to both the "reasonable expectations" and

14 "oppressive" limitations as being aspects of unconscionability.

15 <u>Armendariz</u>, 24 Cal. 4th at 113 (citing <u>A&M Produce Co. v. FMC</u>

16 <u>Corp.</u>, 135 Cal. App. 3d 473, 486-87 (Cal. Ct. App. 1982)).

17     Part of a court's consideration of a party's reasonable

18 expectations also appears to involve whether the party had adequate

19 notice of the arbitration clause, and whether the party would

20 expect the clause to appear based on whether the party is familiar

21 with the type of contract at issue.  <u>See Scissor-Tail</u>, 623 P.2d at

22 165 (finding that a contract of adhesion was not contrary to a

23 party's expectations because he had entered "literally thousands"

24 of such contracts); <u>Marin Storage & Trucking, Inc. v. Benco</u>

25 <u>Contracting & Eng'g, Inc.</u>, 89 Cal. App. 4th 1042, 1057 (Cal. Ct.

26 App. 2001) (finding similarly); <u>see also</u> <u>Fred Briggs Distrib. Co.</u>

27 <u>v. Cal. Cooler, Inc.</u>, 2 F.3d 1156 (9th Cir. 1993) (same).  This

28 consideration also concerns what reasonable consumers would expect

**United States District Court**
For the Northern District of California

1   about the arbitration clause's scope -- for example, whether an

2   arbitration clause included in a warranty would relate only to the

3   warranty, as opposed to including every possible dispute between

4   the parties.  See Bruni, 160 Cal. App. 4th at 1294-95.

5        The issue of what Plaintiff's reasonable expectations were,

6   relative to this arbitration clause, is not purely a legal question

7   -- it involves facts.  The Court finds that Plaintiff has alleged

8   enough to avoid dismissal based on the arbitration clause.  The

9   contract is adhesive, Plaintiff is a manual laborer who was not

10  fluent (or even literate) in English at the time he entered the

11  Agreements, and Mr. Dalpino allegedly misled him as to the

12  Agreements.  Further, the essence of Plaintiff's complaint is that

13  both Transguard and Exel worked to take advantage of his situation

14  as a non-English-speaking non-citizen, using their superior

15  bargaining powers to ensure that Plaintiff would later be

16  disadvantaged in certain ways.

17       At some point, the facts may indicate otherwise, but at this

18  stage the Court finds that the slight substantive unconscionability

19  factors, considered alongside the strong procedural

20  unconscionability in this case, favor rejecting Exel's motion to

21  dismiss based on the arbitration clause.  See Bridge Fund, 622 F.3d

22  at 1004 (unconscionability analysis is a sliding scale).

23  Accordingly, Exel's motion to dismiss Plaintiff's FAC based on the

24  arbitration clause is DENIED, and its motion to compel arbitration

25  is DENIED for the same reasons.  Exel may raise the issue of

26  arbitration in a later motion, but Plaintiff's allegations are

27  enough for his causes of action against Exel to survive at this

28  point.

V.   <u>CONCLUSION</u>

As explained above, Defendants Transguard Insurance Company of America and Exel Direct Inc.'s motions to dismiss Plaintiff Daniel Diaz Villalpando's first amended complaint are DENIED.

IT IS SO ORDERED.

Dated: February 13, 2014          _____

UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

27